**FILED** OJ

NOV 21 2007 rq

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA   )   No. **07 CR   771**
                           )
vs.                        )   Violations: Title 18,   **JUDGE MANNING**
                           )   United States Code,
NICHOLAS DELUCA            )   Sections 1029(a)(2) and 1341

COUNT ONE   **MAGISTRATE JUDGE ASHMAN**
(Mail Fraud)

The UNITED STATES ATTORNEY charges:

1.   At times material to this information:

(a)   Defendant NICHOLAS DELUCA, a resident of Arizona, engaged in the business of selling two-way radios to the public, including customers solicited on the Internet. DELUCA used various names, including "apcosystem," "kickitinn," "watchbuddy," and "whowonders," when offering radios for sale on the Internet auction websites of eBay and Yahoo!.

(b)   Individual A, a resident of California, also engaged in the business of selling two-way radios to the public.

(c)   DELUCA and Individual A at times did business together, assisting one another in acquiring radio parts from Motorola, Inc. ("Motorola"), assembling those parts into two-way radios, and programming the assembled radios with pirated Motorola software. DELUCA and Individual A assembled radios at different locations, including DELUCA's residence in Tucson, Arizona, and a warehouse used by Individual A in Inglewood, California.

(d)     Motorola, based in Schaumburg, Illinois, was a manufacturer and global provider of communication and information technology, software, products, and services for individuals and businesses.   Among the products designed and manufactured by Motorola were two-way radios programmed with Motorola proprietary software, including Saber and XTS series radios.

(e)     Motorola's proprietary software enabled users of its two-way radios to access and communicate on private trunked radio systems designed for certain authorized users, such as public safety and law enforcement departments.  Motorola programmed each of its radios with a unique electronic serial number and with certain codes — known as "system IDs," "system keys," "unit IDs," "talk group IDs," and "flash codes" — to enable the radio user to gain access to particular trunked radio systems.

(f)     Motorola customers could order radio parts directly from Motorola in one of three ways:

(i)     by opening an account with Motorola's sales department and placing orders through that open account.  Customers with an acceptable credit history could open the account on "open terms," meaning that Motorola would accept an order from the customer, ship the requested part, and allow the customer to make payment within 30 days.  Customers with an unacceptable credit history could open an account on "credit card terms," meaning that the customer's order would be billed to a credit card or debit card account number provided by the customer;

(ii)     by placing orders with Motorola's warranty replacement department for replacement of defective parts that were under warranty.  Customers

were required to return the defective parts to Motorola in exchange for new, replacement parts. Motorola also maintained an advance warranty return program pursuant to which Motorola would ship the replacement parts before receiving the defective parts from the customer. Under that advance warranty return program, Motorola would bill the customer for the cost of the replacement parts if Motorola did not receive the defective parts within 45 days; and

(iii)   by ordering parts through Motorola's module exchange program, pursuant to which Motorola would replace obsolete parts with new parts at prices below retail. Motorola would ship the new parts and charge the customer's credit or debit card account after receiving the obsolete parts from the customer.

(g)   Motorola shipped radio parts from a distribution center in Elgin, Illinois.

(h)   DELUCA and Individual A opened accounts and ordered parts from Motorola under various business names, including "C. Donnelly Communications," "The DeLuca Group," "Radio Hut," "Radio Communications Systems, Inc.," "Shadow Team Corporation," "Instacom Corporation," and "EPW Communications, Inc."

2.   Beginning in or about 2001 and continuing until in or about February 2004, at Schaumburg, Illinois; Tucson, Arizona; Inglewood, California, and elsewhere,

NICHOLAS DELUCA,

defendant herein, together with Individual A, devised and participated in a scheme to defraud and to obtain property from Motorola, specifically, parts for two-way radios, costing a total of more than $946,000, by means of materially false and fraudulent

3

pretenses, representations, and promises. As described below, DELUCA and Individual A used fraudulently-obtained radio parts, together with pirated Motorola software, to assemble counterfeit Motorola two-way radios for sale to the public.

3.   It was part of the scheme that DELUCA and Individual A opened a number of accounts with Motorola so that they could continuously order radio parts on credit and not pay for them. DELUCA and Individual A used different business names, including C. Donnelly Communications, The DeLuca Group, Radio Hut, Radio Communications Systems, Inc., Shadow Team Corporation, Instacom Corporation, and EPW Communications, Inc., and different addresses, including residences, rental suites, and mail boxes in Arizona, California, and Nevada, when opening accounts and ordering parts from Motorola. DELUCA and Individual A used different business names and addresses to conceal their fraudulent scheme to obtain radio parts without paying for them.

4.   It was further part of the scheme that after DELUCA and Individual A opened accounts with Motorola, they ordered a variety of radio parts. DELUCA and Individual A placed numerous false orders for the replacement of allegedly defective parts that were under warranty. Those orders were false in that DELUCA and Individual A did not have defective radio parts in their possession which they had legitimately acquired from Motorola and which they intended to return in exchange for new parts. In addition to placing false warranty replacement orders, DELUCA and Individual A ordered new parts on account and under Motorola's module exchange program. DELUCA and Individual A provided Motorola with MasterCard and Visa

4

account numbers for billing purposes, knowing that they did not intend to fully honor all of the charges that they would be placing on those accounts. Motorola filled their orders by shipping over $6,000 worth of radio parts that were ordered under the name of C. Donnelly Communications; over $97,000 worth of radio parts that were ordered under the name of The DeLuca Group; over $227,000 worth of radio parts that were ordered under the name of Radio Hut; over $31,000 worth of radio parts that were ordered under the name of Radio Communications; over $199,000 worth of radio parts that were ordered under the name of Shadow Team; over $56,000 worth of radio parts that were ordered under the name of Instacom; and over $330,000 worth of radio parts that were ordered under the name of EPW Communications.

5.     It was further part of the scheme that DELUCA and Individual A did not pay for all of the radio parts that they had ordered and received from Motorola. Nor did they return to Motorola the allegedly defective radio parts for which they had claimed replacements from Motorola. When Motorola sought to obtain reimbursement by charging the MasterCard and Visa account numbers that had been provided by DELUCA and Individual A, Motorola's charges were dishonored because the accounts contained insufficient funds or because the account numbers that had been provided to Motorola were otherwise invalid.

6.     It was further part of the scheme that DELUCA and Individual A shared the radio parts that they had fraudulently-obtained from Motorola. DELUCA and Individual A used those radio parts to construct counterfeit Motorola radios.

7.     It was further part of the scheme that DELUCA and Individual A

5

programmed the counterfeit Motorola radios that they had constructed with fraudulently-obtained Motorola radio parts. They programmed at least some of the counterfeit radios with pirated Motorola proprietary software that they had obtained without Motorola's knowledge or authorization.

8. It was further part of the scheme that DELUCA and Individual A advertised and offered their counterfeit radios for sale to the public as authentic Motorola radios, at times marking the counterfeit radios with Motorola trademarked labels, thereby creating the false impression that the radios were manufactured, tested, and licensed by Motorola. DELUCA and Individual A offered and sold their counterfeit radios at prices substantially below Motorola's suggested retail prices for comparable models manufactured by Motorola. DELUCA and Individual A profited, at Motorola's expense, by selling counterfeit radios which they constructed with parts for which they had not paid Motorola.

9. On or about April 7, 2003, at Elgin, in the Northern District of Illinois, Eastern Division, and elsewhere,

NICHOLAS DELUCA,

defendant herein, for the purpose of executing the scheme described above, knowingly caused to be delivered by FedEx, a commercial interstate carrier, according to the direction thereon, approximately $1,831 worth of Motorola radio parts, which parts were shipped from Motorola's distribution center in Elgin, Illinois, to "EPW Communications Inc., 1517 N. Wilmot St., #133, Tucson, AZ 85712," which address was a mail box rented by DELUCA at a commercial mail receiving facility in Tucson,

Arizona;

In violation of Title 18, United States Code, Section 1341.

## COUNT TWO
### (Access Device Fraud)

The UNITED STATES ATTORNEY further charges:

1.    The allegations in paragraph 1 of Count One of this information are hereby realleged and incorporated herein.

2.    During the period between about February 2003 and July 2003, at Grand Rapids, in the Western District of Michigan, Southern Division, and elsewhere,

### NICHOLAS DELUCA,

defendant herein, knowingly and with intent to defraud trafficked in unauthorized access devices, and by such conduct obtained money in an amount aggregating more than $1,000, thereby affecting interstate commerce; more specifically, DELUCA marketed "parts built" or "factory fresh" Motorola XTS radios via the Internet auction website of eBay, and sold at least four such radios to a retailer of portable radios in Grand Rapids, Michigan, for at least $750-$800 apiece, which radios were programmed with unauthorized flash codes and serial numbers;

In violation of Title 18, United States Code, Section 1029(a)(2).

_____
UNITED STATES ATTORNEY